IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

MARK STRAIN,                         )
                                     )
         Plaintiff,                )
                                     )
v.                                   )   Case No. CIV-22-313-JAR
                                     )
COMMISSIONER OF THE SOCIAL           )
SECURITY ADMINISTRATION,             )
                                     )
         Defendant.                )

**OPINION AND ORDER**

Plaintiff Mark Strain "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is ordered that the Commissioner's decision be **AFFIRMED**.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 43 years old at the time of the ALJ's decision. Claimant completed his GED. Claimant has worked in the past as a stone mason. Claimant alleges an inability to work beginning January 1, 2019 due to limitations resulting from degenerative

disc disease, nerve impingement, spurs in the neck and elbow, hernia, tennis elbow, and arthritis in the back.

**Procedural History**

On August 1, 2019, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for Supplemental Security Income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On January 11, 2022, Administrative Law Judge ("ALJ") Luke Liter conducted an administrative hearing by telephone due to the extraordinary circumstances posed by the COVID-19 pandemic. On March 16, 2022, the ALJ issued an unfavorable decision. On September 19, 2022, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. While the ALJ determined Claimant had severe impairments, he also found Claimant retained the residual functional capacity ("RFC") to perform certain light work in the national economy.

**Error Alleged for Review**

Claimant asserts the ALJ erred in (1) failing to properly evaluate Claimant's allegations of disability and medical evidence; and (2) failing to properly evaluate Claimant's headache impairment at step two.

**Evaluation of Evidence for RFC**

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease of the lumbar and cervical spine with radiculopathy and sciatica. (Tr. 22). While the ALJ found Claimant's impairments did not meet a listing, he found that Claimant's RFC only supported a finding that he could perform light work. Id.  In so doing, the ALJ determined Claimant was able to lift or carry, push, or pull 20 pounds occasionally and ten pounds frequently; could sit for six hours out of an eight hour workday; and could stand or walk for a combined total of six hours out of an eight hour workday. He also found Claimant coud frequently stoop. Id.

After consultation with a vocational expert, the ALJ determined Claimant could not perform his past relevant work as a stone mason. However, he did find Claimant could perform the

representative jobs of small item inspector, retail marker, and sales attendant, all of which existed in sufficient numbers in the national economy. (Tr. 26). Based upon these findings, the ALJ concluded that Claimant had not been under a disability from January 1, 2019 through the date of the decision. (Tr. 27).

Claimant contends that the ALJ did not adequately address his lumbar radiculopathy and sciatica in the RFC. Claimant repeatedly presented with symptoms of sciatica pain down his left leg and complained of pain which he said was "10/10 just because of the consistency of it." (Tr. 474). Testing indicated that he had degenerative disc disease in his neck and back. (Tr. 490-91, 503-04, 562-63, 648, 652, 664-65). The record, however, indicated no functional restrictions other than tenderness and pain in the neck and back (Tr. 475, 494, 514, 517 520, 523, 526, 529, 533, 542, 545, 547, 618, 640, 643, 661, 704, 706), decreased range of motion in his neck and back on one occasion, (Tr. 547), and "minimal increase in muscle spasm in upper and lower back". (Tr. 706). None of the examining medical professionals indicated restrictions in strength, sensation, or an antalgic gait. Most importantly, Claimant was treated conservatively, mostly with Gabapentin as needed, a muscle relaxant. (Tr. 704); Bainbridge v. Colvin, 618

6

Fed. App'x 384, 387 (10th Cir. 2015). At no point does it appear that surgical intervention was contemplated and Claimant stated on occasion that he tried not to take medication. (Tr. 474).

The ALJ acknowledged Claimant's diagnosed conditions but properly found that the evidence did not support the level of restriction urged by Claimant in his testimony, such as his condition requiring him to stay in bed 70 to 90 percent of the time. (Tr. 23). His findings that the medical record indicated Claimant had a normal gait, normal strength, and intact sensation were supported. (Tr. 25). The ALJ properly considered the level of daily activities in which Claimant engaged and found they did not support the level of restriction to which he testified. He took care of his teenage daughter, was able to care for himself, performed household chores, and took on small masonry projects. (Tr. 44, 47, 383-87, 402-03, 525, 654); Wilson v. Astrue, 602 F.3d 1136, 1146 (10th Cir. 2010)(ALJ reasonably found a claimant's description of her daily activities did not indicate significant limitations, where, among other things, the claimant could care for herself, her home, and her children, drive, and engage in other activities in the home.).

Claimant contends the MRI from November 22, 2021 and CT scan

from October 23, 2019 indicated a prominent disc protrusion with an annular fissure at L4-5 as well as L5 root involvement which Claimant indicates would correlate with Claimant's pain symptoms. Claimant asserts this supports a further restriction in the RFC because he cannot stand for six hours out of an eight hour day, thereby precluding light work.

Claimant's argument suffers from a lack of support in the record. At no point has any professional found the level of restriction in Claimant's ability to stand which he now urges. The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. See e.g. Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition); Madrid v. Astrue, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); Scull v. Apfel, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL

1028250, 1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). The fact the MRI and CT scan indicated degenerative conditions in Claimant's back does not translate into a severe impairment. The ALJ did not err in finding this condition as well as several others did not significantly limit Claimant=s ability to work.

Claimant also indicates that if the state agency consultants who concluded Claimant could perform light work had had the benefit of the later MRI and CT scan, they would have reached a different conclusion. Based upon the record available to them at the time, these professionals concluded that there were few clinical deficits in the record to indicate further restrictions. (Tr. 114). This continued to be the case after the ALJ evaluated the later testing in light of the assessments by the state agency physicians. (Tr. 702-06). Throughout 2021 and 2022, Claimant continued to have normal strength and sensation with a normal gait. (Tr. 475, 494, 514, 517, 520, 523, 526, 529, 533, 542, 545, 547, 618, 640, 643, 661, 704, 706). The ALJ's findings in accepting the state agency professionals' opinions in light of the later record was supported. <u>Trujillo v. Comm'r SSA</u>, 818 Fed. App'x 835, 840-41 (10th Cir. 2020)(rejecting that state agency opinions were

stale where the claimant "points to later treatment records but fails to explain haow they materially differ from the medical evidence predating the [state agency] opinions. Nor does she develop any argument that the opinions are 'overwhelmingly contradicted' by more recent evidence. We will not craft such an argument for her."). Even considering the testing showing a somewhat worsening condition, the ALJ's RFC restrictions are supported by the evidence, including the medical record and the state agency opinions.

### Step Two Assessment

Claimant also asserts the ALJ should have included headaches as a severe impairment at step two. Because the ALJ did find that Claimant had severe impairments, any failure to find Claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effects of these impairments and account for them in formulating Claimant's RFC at step four. See, e.g., Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [Claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive

step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.'"), quoting <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1123B24 (10th Cir. 2004) and 20 C.F.R. § 404.1523. See also <u>Hill v. Astrue</u>, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].

In this case, the ALJ did discuss Claimant's headaches but found he did not want any pain medication. (Tr. 24). The ALJ, therefore, considered Claimant's headaches in his evaluation.

Moreover, the condition was sporadic. (Tr. 704). The headaches appeared to be related to Claimant's neck pain. (Tr. 58-59, 525, 541). Because they are secondary to another

11

condition, Claimant's headaches could not be considered a medically determinable impairment. Soc. Sec. R. 19-4p. Claimant does not offer any evidence that this condition would restrict his ability to engage in basic work activities more than is already contemplated by the RFC. This Court finds no error in the ALJ's consideration of Claimant's headaches.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 29th day of March, 2024.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE